**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JONATHAN MCCAUSLAND, PhD**<br>25 Maple Avenue, Apt. 619<br>New Rochelle, NY, 10801<br>**Plaintiff**<br>vs.<br><br>**THE PENNSYLVANIA STATE UNIVERSITY**<br>Office of the General Counsel<br>227 West Beaver Avenue, Suite 507<br>State College, PA, 16801<br><br>and<br><br>**JEANINE STAPLES-DIXON, PhD**<br>428 Allen Road<br>172 Chambers Building<br>State College, PA, 16801<br><br>**Defendants.** | **CIVIL COMPLAINT**<br><br>**NO: 2:25-cv-07128**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Defendants disclosed Plaintiff's private history of childhood sexual assaults, including explicit details, along with his full name and professional title, in a nationally published book without permission, warning, or notice to further Defendants' pedagogical, research, monetary, and publication goals.

Defendants fraudulently induced Plaintiff to share the most private details of his life under the guise of strict confidentiality in a private setting. In reality, Defendants had full intention of publicizing Plaintiff's trauma for (among other things) monetary gain. Plaintiff first learned of the publication of these private details of his life from other teaching assistants whose personal stories were *also* recounted in detail and by name in Defendants' book. Defendants' book, "Extraordinary

Pedagogies: An Endarkened Feminist Approach to Revolutionizing Teacher Consciousness," was published December 24, 2024, by Teachers College Press and remains available for purchase on national online platforms as of December 29, 2025.[1]

The resulting experience of betrayal, embarrassment, humiliation, and re-traumatization caused by Defendants again stripping Plaintiff of his autonomy has caused him to suffer diminished physical health, extreme mental and emotional distress requiring professional therapy, and has greatly damaged his past and current job performance and future career prospects.

## II. PARTIES

1. Plaintiff Jonathan McCausland, PhD, is an adult individual and private figure who is a citizen of, and domiciled in, New York at the above captioned address, and who previously served as a Teaching Assistant for both named Defendants.

2. Defendant The Pennsylvania State University (hereafter, "Penn State") is a research and teaching university with a principal place of business at the above captioned address which employs professors and others, including Defendant Jeanine Staples-Dixon, PhD.

3. Defendant Jeanine Staples-Dixon, Ph.D., (hereafter "Dr. Staples-Dixon" or "Staples-Dixon"), is an adult individual and professor at all relevant times employed by Defendant Penn State, with a principal place of business at the above captioned address.

4. Defendants Penn State and Dr. Staples-Dixon are hereafter referred to collectively as "Defendants."

5. At all times pertinent hereto, Dr. Staples-Dixon was an employee and/or agent of Penn State.

[1] As of February 13, 2026, the book is still available for purchase on Amazon.com and is listed as available for purchase but on "back order" on the Teachers College Press website. On information and belief, in approximately March of 2025, sales of the book were suspended and identifying information regarding the plaintiff was removed.

6. Each and every Defendant is liable for the acts of its agents, servants, and/or employees.

## III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332. Defendants are citizens of a state other than the state of Plaintiff's current citizenship and residency. The amount in controversy substantially exceeds the requirement for Federal Diversity Jurisdiction and to guarantee a jury trial, exclusive of interest and costs.

8. This Court has jurisdiction over the parties because the Defendants' tortious conduct at issue in this action, and all the essential facts involved therein, occurred in Pennsylvania.

9. Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants are subject to this Court's personal jurisdiction with respect to the civil action in question. Additionally, a substantial portion of the events and omissions giving rise to this claim occurred in Philadelphia. Specifically, Defendants first induced Plaintiff to share his intensely personal story, and first learned of the sensitive details they would later publish to the world, in Philadelphia County, and all such revelations occurred in a class aimed at developing educators to serve in the Philadelphia public school system.

## IV. FACTS

10. Plaintiff began studying for his Ph.D. at Defendant Penn State in fall 2017, at which time he enrolled in a class taught by Defendant Staples-Dixon.

11. Defendant Staples-Dixon is currently, and has been since 2013, a tenured professor employed by Defendant Penn State in its College of Education as a Professor of Literacy and Language, African American Studies, & Women's, Gender, and Sexuality Studies, and in 2023 she was named a senior faculty mentor in the Office of Educational Equity.

12. At the end of that course, Defendant Staples-Dixon asked Plaintiff if he would be willing to serve as a Teaching Assistant for a course she would be teaching the following summer, the "Philadelphia Urban Seminar," (hereafter "Seminar") and Plaintiff agreed to do so.

13. The Seminar was taught on Penn State's campus, aside from the summer of 2019, when the Seminar was held in-person at LaSalle University in Philadelphia.

14. The Seminar students were Defendant Penn State students who received academic credit from Defendant Penn State for their participation.

15. The Seminar's Teaching Assistants were Defendant Penn State's Graduate Students.

16. As a requirement for students attending the Seminar, students completed several intake forms pertaining to confidentiality, as well as photographical and medical release forms.

17. Plaintiff himself was placed in charge of ensuring that students completed all necessary paperwork in January 2018. Plaintiff would remain in charge of obtaining this paperwork until he graduated and departed Defendant Penn State in 2022.

18. This paperwork included "Informed Consent for Social Science Research" forms, on Penn State letterhead, indicating that Defendant Staples-Dixon, as Principal Investigator, and the Teaching Assistants would be conducting social science research involving the students in the Seminar.

19. These "Informed Consent" forms further stated, in pertinent part, that (i) students' writing would not be used as social science research without their consent, (ii) participation in the research was voluntary, and (iii) information shared in class would be *confidential* and would not be shared outside the classroom without permission, and that no personally identifiable information would be shared "in the event of a publication."

20. In May 2018, Defendant Staples-Dixon, as part of the Philadelphia Urban Seminar (hereafter the "Seminar") for which Plaintiff was then a Teaching Assistant, instructed her Teaching Assistants to share their "gender stories."

21. Defendant Staples-Dixon instructed the Teaching Assistants that "extreme vulnerability" was an essential part of the pedagogical value of the seminar and encouraged such extreme vulnerability on the part of the Teaching Assistants, including Plaintiff.

22. During the Summer 2018 session of the Seminar, the gender story Plaintiff shared related to how competition and athletics shaped his own ideas of masculinity, which Plaintiff felt was viewed as insufficiently vulnerable when compared to the highly personal gender stories shared by other Teaching Assistants.

23. Plaintiff returned to serve as a Teaching Assistant in the Seminar the next year, in the summer of 2019, when the Seminar was held in-person at LaSalle University in Philadelphia.

24. Prior to the beginning of the 2019 Seminar, Plaintiff ensured that all students had signed the paperwork discussed above.

25. That summer, during a meeting with Defendant Staples-Dixon and the Seminar's instructional team, with whom he had grown to feel safe, shortly before May 25, 2019, Plaintiff revealed to her a story about having been sexually abused as a child, which Defendant Staples-Dixon encouraged and described as a powerful manner in which to model the extreme vulnerability called for by the Seminar's pedagogy.

26. Plaintiff, believing he could trust Defendant Staples-Dixon's confidentiality, the norms of trust and confidentiality in the seminar, and given his familiarity with the paperwork all students signed related to confidentiality, agreed to share his story with the Seminar's few students.

27. In a session held at LaSalle University in Philadelphia on or about May 25, 2019, as part of the "gender story" component of his duties as a Teaching Assistant, Plaintiff shared with Seminar students that he had, from the ages of 7 to 10 years old, been sexually abused by older boys who lived in his neighborhood, and that this abuse had caused him lifelong struggles related to trust, relationships, intimacy, and identity.

28. Defendant Staples-Dixon positively reinforced this disclosure (unlike the one related to athletics and competition that Plaintiff had shared previously), making it clear to Plaintiff that this intensely personal story was the type expected and placed more pressure on him to reveal it again in the future.

29. Plaintiff returned as a Teaching Assistant for the Seminar again in the summer of 2020, when it was held virtually, and Plaintiff ensured that all students had signed the confidentiality paperwork discussed above prior to the start of the class.

30. In a planning session on or about May 22, 2020, Defendant Staples-Dixon encouraged Plaintiff to once again share the story of his childhood sexual abuse at the hands of older boys.

31. Plaintiff complied, and again told his story to the students, which was now scheduled to be the final story shared during the confidential Seminar session, after other Teaching Assistants also shared highly personal stories.

32. Plaintiff again returned as a Teaching Assistant for the 2021 session of the Seminar, again held largely via videoconference, and again ensured that the Seminar's students all signed the paperwork described above.

33. In the Spring of 2021, Defendant Staples-Dixon again encouraged Plaintiff, during a planning session, to confidentially share the story of his childhood sexual abuse.

34. On or about May 20, 2021, Plaintiff again shared that story as the final "gender story" of the Seminar session, after other Teaching Assistants also shared highly personal stories, feeling pressured to do so despite reservations at the time arising from seeking treatment for the emotional fallout from the abuse.

35. Plaintiff returned for a final term as a Teaching Assistant in the Seminar in the Summer of 2022, held in part by videoconference, again ensuring that all students signed the paperwork described above prior to the course.

36. Defendant Staples-Dixon again asked Plaintiff to share the story of his childhood abuse as the final "gender story" in the Seminar session devoted to them due to its emotional impact and demonstration of extreme vulnerability.

37. On or about May 20, 2022, Plaintiff once more shared the story of his childhood sexual assault with the Seminar's students, and other Teaching Assistants also shared highly personal stories.

38. During Plaintiff's participation in the Seminar, Defendant Staples-Dixon frequently discussed the book at issue in this case, the research she was conducting for it, as well as the relationship of the Seminar and its research to the book.

39. On or about December 24, 2024, Defendants published their book, "Extraordinary Pedagogies: An Endarkened Feminist Approach to Revolutionizing Teacher Consciousness," through Teachers College Press.

40. The book was based on Defendants' research conducted in the Seminar, and dealt with topics related to Education, African American Studies, Literacy and Language, and Women's, Gender, and Sexuality Studies.

41. Unbeknownst to Plaintiff, that book included the following passage on Page 111 of the first edition hardcover:

"**Dr. JD McCausland** talked about the sexual molestation he endured with his childhood best friend, perpetuated by a group of older, bigger teenage boys. He talked about the confusion, anger fear, and stress he endured via the abuse and how he felt tortured in his gender identity and sexual orientation until he generated the strength to claim his identify for himself as a straight, cis man. Telling these stories means locating your power. This is a feat, especially when one's gender identity, expression, and sexual orientation are crippled and corrupted by sexism, misogyny, and misogynoir."

42. Defendants publicized the release the book with a "book forum event" on February 27, 2025, held on campus in Defendant Penn State's facilities, inviting people to "Join the Penn State College of Education community" for a conversation with Defendant Staples-Dixon about her book, and providing a link through which to register for the event.

43. The invitation to the book forum event was, and remains to this day, posted in two places on Defendant Penn State's official public website,[2] screenshots of which are attached as Exhibit 1.

44. Defendant Penn State's official public website includes a "College of Education News" page dated February 27, 2025, attached as Exhibit 2, which states that Defendant Staples-Dixon has published the book at issue.[3]

45. Defendant Penn State's public website also states that Defendant Staples-Dixon is "currently writing two books that are eagerly anticipated by the field" including the book at issue in this complaint; a screenshot of this is attached as Exhibit 3.[4]

[2] https://www.psu.edu/news/education/events/book-forum-event-extraordinary-pedagogies-endarkened-feminist-approach; https://equity.psu.edu/news/2025/book-forum-event-extraordinary-pedagogies-an-endarkened-feminist-approach-to-revolutionizing-teacher-consciousness-by-jeanine-staples-dixon
[3] https://www.psu.edu/news/education/story/college-education-news-feb-27-2025
[4] https://equity.psu.edu/offices/senior-faculty-mentors/jms1098

46. On or about February 27, 2025, Plaintiff learned for the first time, through a third-party, that Defendants had published, in a commercially available book, stories shared by multiple Teaching Assistants, including the details Plaintiff had shared at the direction of Defendant Staples-Dixon in a forum he believed to be confidential and safe.

47. Defendants never sought Plaintiff's consent to publish this intensely personal story, nor did Defendants notify Plaintiff that his name, much less his story, would appear in their book, either before its publication or in the two months that followed.

48. When Plaintiff learned that his most personal history had been published and associated with him by name and professional title, he reacted physically, experiencing hyperventilation, a racing heart, and an inability to sleep, as well as emotionally, feeling betrayed, re-traumatized and re-triggered by the disclosure of this information and the certainty that people close to him would learn of his childhood abuse for the first time from a commercially published book.

49. Over the months that followed the publication of the book, Plaintiff began to miss and cancel professional meetings and dropped out of a scheduled presentation at a major academic conference, all for fear that he would have to confront people who had learned of his abuse through Defendants' publication of it.

50. Plaintiff, due to the emotional and physical dismay Defendants' publication of his history of sexual abuse had caused, ceased working on writing projects, paused research, dropped grant applications, and otherwise ceased pursuing his career and academic endeavors.

51. In the semester that followed Defendants' publication of his history, Plaintiff received the worst teaching evaluations of his professional career.

52. Plaintiff's physical health deteriorated in this time, and he involuntarily gained weight and received the first negative medical laboratory results of his life, including never before seen negative markers for diabetes and liver disease.

53. Plaintiff's mental health also suffered, and, following Defendants' publication of their book, he was diagnosed with and treated for post-traumatic stress disorder, panic attacks, and anxiety by a professional therapist.

54. Plaintiff continues to feel the need to isolate, recoils from physical touch, and struggles to sleep, remain physically healthy, engage in work, and stay connected to friends and loved ones.

55. All of the above is a direct and proximate cause of the Defendants' actions and conduct at issue.

## V. THEORIES OF LIABILITY AND CAUSES OF ACTION

### COUNT ONE
### PLAINTIFF v. DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY
### PUBLIC DISCLOSURE OF PRIVATE FACTS

56. Plaintiff incorporates the above paragraphs by reference.

57. Plaintiff is and at all times was a private figure.

58. Defendant Penn State is responsible for its own conduct and vicariously for the conduct of Dr. Staples-Dixon.

59. Defendant Penn State, by publishing Plaintiff's history of childhood sexual abuse in a nationally available book and promoting that book on its public website, gave publicity to matters concerning the most private and personal aspects of Plaintiff's life.

60. At the time Defendant Penn State published Plaintiff's history of abuse, that information was private, and had been shared only with Plaintiff's spouse, therapist, and the select students in the context of the confidential and private Seminar sessions described above.

61. The mass publication, particularly for commercial gain, of a person's history of having suffered such severe childhood trauma would be highly offensive to any reasonable person, and has in fact been highly offensive, as well as mentally and physically injurious, to Plaintiff.

62. Plaintiff's history of childhood sexual abuse is not newsworthy nor a matter of legitimate concern to the public.

63. As a direct and proximate result of Defendant Penn State's disclosure of the private facts of Plaintiff's life, Plaintiff has suffered and will continue to suffer the harms previously set forth herein, including diminished physical health, lost earning capacity, diminished professional prospects, emotional distress, humiliation, mental anguish, and loss of life's pleasures.

**WHEREFORE**, Plaintiff hereby demands damages from Defendant Penn State in an amount significantly in excess of the jurisdictional limit for a jury trial, plus costs, delay damages, punitive damages, and such other relief as this Honorable Court deems just and appropriate.

## COUNT TWO
## PLAINTIFF v. DEFENDANT DR. STAPLES-DIXON
### PUBLIC DISCLOSURE OF PRIVATE FACTS

64. Plaintiff incorporates the above paragraphs by reference.

65. Plaintiff was at all times pertinent hereto a private figure.

66. Defendant Staples-Dixon, by publishing Plaintiff's history of childhood sexual abuse in a nationally available book, and further promoting that book post-publication, gave publicity to matters concerning the most private and personal aspects of Plaintiff's life.

67. At the time Defendant Staples-Dixon published Plaintiff's history of abuse, that information was private, and had been shared only with Plaintiff's spouse, therapist, and the select students in the context of the confidential and private Seminar sessions described above.

68. The mass publication, particularly for commercial gain, of a person's history of having suffered such severe childhood trauma would be highly offensive to any reasonable person, and has in fact been highly offensive, as well as mentally and physically injurious, to Plaintiff.

69. Plaintiff's history of childhood sexual abuse is not newsworthy nor a matter of legitimate concern to the public.

70. As a direct and proximate result of Defendant Staples-Dixon's disclosure of the private facts of Plaintiff's life, Plaintiff has suffered and will continue to suffer the harms previously set forth herein, including diminished physical health, lost earning capacity, diminished professional prospects, emotional distress, humiliation, mental anguish, and loss of life's pleasures.

**WHEREFORE**, Plaintiff hereby demands damages from Defendant Staples-Dixon in an amount significantly in excess of the jurisdictional limit for a jury trial, plus costs, delay damages, punitive damages, and such other relief as this Honorable Court deems just and appropriate.

**COUNT THREE**
**PLAINTIFF v. DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

71. Plaintiff incorporates the above paragraphs by reference.

72. Defendant Penn State is responsible for its own conduct and vicariously for the conduct of Dr. Staples-Dixon.

73. Defendant Penn State caused Plaintiff severe emotional and physical distress through its extreme and outrageous conduct.

74. Specifically, Defendant Penn State published Plaintiff's history of having been sexually abused as a child, naming Plaintiff and identifying him by professional title, in a commercially released and nationally available book it publicly continues to promote, without notice to or consent from Plaintiff.

75. Defendant Penn State did so with full knowledge that Plaintiff had shared such information while Plaintiff was a Teaching Assistant answerable to Defendant and that Plaintiff had shared such information in a sensitive confidential setting which any reasonable person would have perceived as both safe and confidential and indeed was told as much.

76. Defendant knew or should have known that its conduct would create a high risk of emotional harm to Plaintiff, but recklessly and without consulting Plaintiff proceeded to publish Plaintiff's history of childhood abuse anyway.

77. As a direct and proximate result of Defendant Penn State's outrageous and extreme conduct, Plaintiff has suffered severe emotional distress, manifesting itself in a medically demonstrable deterioration of Plaintiff's physical health, and has required, and continues to require, professional medical treatment for both physical and psychiatric symptoms.

78. As a direct and proximate result of Defendant Penn State's disclosure of the private facts of Plaintiff's life, Plaintiff has suffered and will continue to suffer the harms previously set forth herein, including diminished physical health, lost earning capacity, diminished professional prospects, emotional distress, humiliation, mental anguish, and loss of life's pleasures.

**WHEREFORE**, Plaintiff hereby demands damages from Defendant Penn State in an amount in excess of the jurisdictional limit for a jury trial, plus costs, delay damages, punitive damages, and such other relief as this Honorable Court deems just and appropriate.

**COUNT FOUR**
**PLAINTIFF v. DEFENDANT DR. STAPLES- DIXON**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

79. Plaintiff incorporates the above paragraphs by reference.

80. Defendant Staples-Dixon caused Plaintiff severe emotional and physical distress through her extreme and outrageous conduct.

81. Specifically, Defendant Staples-Dixon published Plaintiff's history of having been sexually abused as a child, naming Plaintiff and identifying him by professional title, in a commercially released and nationally available book she continues to promote post-publication, without notice to or consent from Plaintiff.

82. Defendant Staples-Dixon did so knowing that Plaintiff had shared such information encouraged by Defendant, while Plaintiff was a Teaching Assistant answerable to Defendant, and that Plaintiff had shared such information in a sensitive confidential setting which any reasonable person would have perceived as both safe and confidential and indeed was told as much.

83. Defendant Staples- Dixon knew or should have known that her conduct would create a high risk of emotional harm to Plaintiff, but recklessly and without consulting Plaintiff proceeded to publish Plaintiff's history of childhood abuse anyway.

84. As a direct and proximate result of Defendant Staples-Dixon's outrageous and extreme conduct, Plaintiff has suffered severe emotional distress, manifesting itself in a medically demonstrable deterioration of Plaintiff's physical health, and has required, and continues to require, professional medical treatment for both physical and psychiatric symptoms.

85. As a direct and proximate result of Defendant Staples-Dixon's disclosure of the private facts of Plaintiff's life, Plaintiff has suffered and will continue to suffer the harms previously set forth herein, including diminished physical health, lost earning capacity, diminished

professional prospects, emotional distress, humiliation, mental anguish, and loss of life's pleasures.

**WHEREFORE**, Plaintiff hereby demands damages from Defendant Staples-Dixon in an amount in excess of the jurisdictional limit for a jury trial, plus costs, delay damages, punitive damages, and such other relief as this Honorable Court deems just and appropriate.

**NOTICE OF PRESERVATION OF EVIDENCE**

PLAINTIFF HEREBY DEMANDS AND REQUESTS THAT DEFENDANTS TAKE NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, WHETHER ELECTRONIC OR OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR FROM WHOM ANY PARTY TO THIS ACTION HAS ACCESS, ANY DOCUMENTS, ITEMS, OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR THE ALLEGATIONS OF THIS COMPLAINT.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial.

**THE BEASLEY FIRM, LLC**

**BY:** ***/s/ Andrew Warshawer***

LANE R. JUBB, JR., ESQ.
ANDREW WARSHAWER, ESQ.
1125 Walnut Street
Philadelphia, Pa 19107
215.592.1000
215.592.8360 (fax)
*Attorneys for Plaintiff*

Date: February 13, 2026