**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JONATHAN MCCAUSLAND, PHD,**<br>*Plaintiff,*<br><br>**v.**<br><br>**THE PENNSYLVANIA STATE UNIVERSITY and JEANINE STAPLES-DIXON, PHD,**<br>*Defendants.* | **Civil No. 25-7128** |

# MEMORANDUM

**Costello, J.** **September 18, 2026**

Plaintiff Jonathan McCausland is a former graduate student and teaching assistant ("TA") at Penn State University ("Penn State"). In 2024, Jeanine Staples-Dixon, a tenured professor at Penn State, published a book that disclosed Plaintiff's childhood sexual abuse. Plaintiff then sued Professor Staples-Dixon and Penn State (collectively, "Defendants") for public disclosure of private life and intentional infliction of emotional distress. Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As is discussed in detail below, Plaintiff has stated plausible claims against Staples-Dixon. However, Plaintiff has failed to allege plausible claims against Penn State. Therefore, the Court will deny Staples-Dixon's motion and grant Penn State's motion without prejudice.

## I. BACKGROUND

In 2018, Plaintiff began working as a TA for Professor Staples-Dixon's Philadelphia Urban Seminar at Penn State. Am. Compl. ¶¶ 12, 17-20 (ECF No. 14). This yearly seminar was held in the summer for a small number of students. *See id.* ¶¶ 13, 23, 26. As part of the course,

Staples-Dixon instructed her TAs to share their "gender stories." *Id.* ¶ 20. She explained that extreme vulnerability "was an essential part of the pedagogical value of the seminar," and she wanted her TAs to model that vulnerability for her students. *Id.* ¶¶ 21, 25.

To facilitate open and honest communication among seminar participants, every student was required to complete several intake forms pertaining to confidentiality. *Id.* ¶ 16. The forms stated that all information shared in class would be confidential, would not be shared outside the classroom without permission, and would be anonymized in the event of publication. *Id.* ¶ 19. Neither Staples-Dixon nor the TAs signed the confidentiality forms.

During the summer 2018 seminar, Plaintiff shared a gender story relating to how competition and athletics shaped his ideas of masculinity. *Id.* ¶ 22. However, Plaintiff felt that this story was "insufficiently vulnerable when compared to the highly personal gender stories share by other" TAs. *Id.* During a planning session for the 2019 seminar, Plaintiff shared with Staples-Dixon that he had been sexually abused as a child by older boys who lived in his neighborhood. *Id.* ¶¶ 24, 27. Staples-Dixon encouraged Plaintiff to share his story with seminar participants because it revealed the exact kind of extreme vulnerability that she wanted to discuss in the course. *Id.* ¶ 25. Trusting the norms of confidentiality in the seminar and the agreements signed by every student, Plaintiff agreed. *Id.* ¶¶ 26-27. With Staples-Dixon's encouragement, Plaintiff continued to share his sexual abuse with seminar participants during the 2020, 2021, and 2022 sessions. *Id.* ¶¶ 29-37. Plaintiff graduated from Penn State in 2022. *Id.* ¶ 17.

In December 2024, Staples-Dixon published "Extraordinary Pedagogies: An Endarkened Feminist Approach to Revolutionizing Teacher Consciousness" through Teachers College Press. *Id.* ¶ 39. She based the book on the research she conducted during the seminar. *Id.* ¶ 40. The book included the following passage recounting Plaintiff's sexual abuse:

> Dr. JD McCausland talked about the sexual molestation he endured with his childhood best friend, perpetuated by a group of older, bigger teenage boys. He talked about the confusion, anger fear, and stress he endured via the abuse and how he felt tortured in his gender identity and sexual orientation until he generated the strength to claim his identify for himself as a straight, cis man. Telling these stories means locating your power. This is a feat, especially when one's gender identity, expression, and sexual orientation are crippled and corrupted by sexism, misogyny, and misogynoir.

*Id.* ¶ 41.

Penn State publicized Staples-Dixon's book with a forum event in February 2025. *Id.* ¶ 42. Its online invitation encouraged students to join "a conversation about Professor of Education Jeanine Staples-Dixon's latest book." *Id.* ¶ 43; ECF No. 14-1 at 2 ("Exhibit 1"). Penn State's website also noted in Staples-Dixon's faculty biography that she was "currently writing two books," including the book at issue. ECF No. 14 ¶ 45.

When Plaintiff learned of the book in late February 2025, he felt betrayed. *Id.* ¶ 46, 48. Staples-Dixon never sought Plaintiff's consent to publish his story, and he was particularly shocked by the fact that Staples-Dixon referenced him by name and professional title. *Id.* ¶¶ 47-48. As a result of Staples-Dixon's disclosure, Plaintiff alleges that he suffered severe emotional distress, deteriorated physical health, difficulty in his professional pursuits, and mental health struggles. *Id.* ¶¶ 49-55.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Assessing plausibility under *Twombly* requires three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (internal quotations and alterations omitted). Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court must accept as true all "'well-pleaded factual allegations,'" draw all reasonable inferences from those allegations, and "'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alterations omitted). "If the well-pleaded facts do not nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint." *Lynch v. Tasty Baking Co.*, No. 23cv4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### A. Publicity Given to Private Life

"To state a claim for publicity given to private life, a plaintiff must allege that the matter publicized is '(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public.'" *Boring v. Google Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010) (quoting *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984)).

#### 1. Private Fact

Plaintiff alleged that his history of childhood sexual abuse was a private fact that had been shared with only Plaintiff's spouse, therapist, and the students of the confidential seminar. ECF No. 14 ¶¶ 66-68. Staples-Dixon argues that because Plaintiff disclosed his abuse to seminar participants, it was not a private fact. ECF No. 17-1 at 9. Staples-Dixon is mistaken.

"A private fact is one that has not already been made public." *Harris by Harris*, 483 A.2d at 1384. A fact is made public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Burger v. Blaid Med. Assocs., Inc.*, 964 A.2d 374, 378 (Pa. 2009) (quotation omitted). However, "disclosures to a small number of persons do not" make a fact public. *Burger*, 964 A.2d at 380 n.6 (citing *Vogel v. W.T. Grant Co.*, 327 A.3d 133, 137 (Pa. 1974)). "The distinction between public and private communication is not just a matter of numbers. This is a qualitative inquiry, not a quantitative one." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023), *cited by Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024) (quotation modified).

Here, Plaintiff's disclosures to seminar participants were not substantially certain to make his experiences public knowledge. *See Burger*, 964 A.2d at 379. Plaintiff shared his sexual abuse with students during the seminar from 2019 to 2022. ECF No. 14 ¶¶ 27-37. Each student completed an intake form stating that information shared in the course was confidential and would not be shared outside the classroom without permission. *Id.* ¶¶ 17-19. Although Staples-Dixon emphasizes that neither she nor the other TAs signed that form, *see* ECF No. 17-1 at 10, Plaintiff is entitled to an inference that the form and sensitive subject matter discussed in the seminar created an expectation of confidentiality. Indeed, even if Staples-Dixon and the other TAs could have discussed that information outside of the seminar, Plaintiff's disclosure to them did not make it substantially certain that his past abuse would become public knowledge. Given this context, Plaintiff has plausibly alleged that his sexual abuse was a private fact despite his disclosures to seminar participants.

**2. Publicity**

Penn State argues that the claim for public disclosure of private life against it should be dismissed because Plaintiff failed to allege that it gave publicity to his abuse. In the Amended Complaint, Plaintiff alleged that Penn State publicized his abuse by publishing his history in Staples-Dixon's book, promoting the book on its website, and noting that Staples-Dixon is "currently writing two books" in her faculty biography. ECF No. 14 ¶¶ 42-45, 59. Penn State argues that it had no role in publishing Staples-Dixon's book and its promotions of that book did not communicate anything about Plaintiff's history. ECF No. 16-1 at 7-10. The Court agrees.

"'Publicity' means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Vogel*, 327 A.2d at 137 (quoting RESTATEMENT (SECOND) OF TORTS § 652D cmt. b). To be actionable, the defendant's "communication must 'reach[], or [be] sure to reach, the public.'" *Nabozny*, 84 F.4th at 736 (quoting RESTATEMENT (SECOND) OF TORTS § 652D cmt. a).

Here, Penn State's conduct was not substantially certain to make Plaintiff's abuse public knowledge. First, Penn State did not publish Staples-Dixon's book. Teachers College Press did. ECF No. 14 ¶ 39; *see also* ECF No. 14-1 at 7 ("Exhibit 3"). Plaintiff did not make any allegations to the contrary. Plaintiff speculates that Penn State may have approved the book for publication, *see* ECF No. 19-2 at 10, but that is not enough to defeat a motion to dismiss. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Second, Penn State's promotion of Staples-Dixon's book did not communicate the content of the book. Plaintiff alleged that Penn State posted an invitation to a book forum event

on its website. ECF No. 14 ¶¶ 42-43. The invitation states only that the event will include "a conversation about . . . Staples-Dixon's latest book." ECF No. 14-1 at 2 ("Exhibit 1"). Nothing in this communication made it substantially certain that Plaintiff's sexual abuse would become public knowledge. The invitation includes no content from the book or any reference to Plaintiff. The same analysis applies with respect to Plaintiff's argument that Staples-Dixon's faculty biography constitutes publication because that biography merely states that she is "currently writing two books." ECF No. 14 ¶ 45. Furthermore, even if Penn State's promotion had publicized Plaintiff's abuse, Staples-Dixon's book had already disclosed that information to the public. *See Jenkins v. Bolla*, 600 A.2d 1293, 1296 (Pa. Super. Ct. 1992) (noting that a disclosure is not actionable where the facts at issue are already "available to the public for inspection"). Accordingly, Plaintiff failed to plausibly allege that Penn State publicized his sexual abuse. The Court will therefore dismiss Count I.

**B. Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress under Pennsylvania law, Plaintiff must allege that Defendants intentionally or recklessly caused him severe emotional distress by "extreme and outrageous conduct." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). Courts are "chary to allow recovery for a claim" of intentional infliction of emotional distress. *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. Super. Ct. 1998). The cause of action is reserved for "only the most egregious conduct." *Id.* at 754. Defendants argue that Plaintiff failed to allege conduct that meets this standard. The Court agrees as to Penn State. However, Plaintiff plausibly alleged sufficiently egregious conduct against Staples-Dixon. Plaintiff also plausibly alleged that Staples-Dixon recklessly caused his emotional distress.

**1. Extreme and Outrageous Conduct**

"'Liability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 217 (3d Cir. 2013) (citation modified). "The court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct." *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979).

**a. Staples-Dixon**

Plaintiff alleged that Staples-Dixon's publication of his sexual abuse was extreme and outrageous. ECF No. 14 ¶ 81. Staples-Dixon disagrees and argues that she never signed a confidentiality agreement with Plaintiff and her short reference to Plaintiff's abuse was only a small portion of the full account. ECF No. 17-1 at 14. Staples-Dixon's argument is unavailing.

Whether conduct is extreme and outrageous is context dependent. *See* RESTATEMENT (SECOND) OF TORTS cmts. d-g. In general, "[p]ublication of truthful, albeit embarrassing, information" does not "constitute extreme and outrageous conduct." *Lowe v. Hearst Commc'ns, Inc.*, 414 F. Supp. 2d 669, 676 (W.D. Tex. 2006) (investigative journalism of an extortion scheme); *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 671 (E.D. Va. 2019) (hacked emails disclosing workplace gossip). In contrast, publication of highly sensitive personal information may be extreme and outrageous. *Hernandez v. Quinn*, No. 2017 EDA 2017, 2018 WL 3135302, at *13 (Pa. Super. Ct. June 27, 2018). For instance, in *Hernandez*, the Superior Court held that dissemination of the plaintiff's drug treatment, medical and psychiatric records, and photographs of him naked to one person could reasonably be found to be extreme

and outrageous. *Id.*; *see also Ulizzi v. Trellis*, 20 Pa. D. & C.4th 300, 316 (Pa. C.P. 1993); *cf. Chuy*, 595 F.2d at 1274.

Here, a reasonable fact finder could determine that Staples-Dixon's publication of Plaintiff's sexual abuse was extreme and outrageous. She published one of "the most private and personal aspects of Plaintiff's life." ECF No. 14 ¶ 66. And Plaintiff shared with Staples-Dixon and other seminar participants that "this abuse had caused him lifelong struggles related to trust, relationships, intimacy, and identity." *Id.* ¶ 28. In fact, Plaintiff alleged that Staples-Dixon encouraged him to share his story precisely for that reason—"to model the extreme vulnerability called for by the Seminar's pedagogy." *Id.* ¶ 25. Therefore, like the dissemination of the sensitive records and intimate photographs in *Hernandez*, Staples-Dixon disclosure could reasonably be considered extreme and outrageous.

**b. Penn State**

As discussed above, Plaintiff concedes that Penn State did not publish Staples-Dixon's book and Plaintiff failed to allege that Penn State had any role in its publication. Merely promoting a book is not "utterly intolerable in a civilized society." *Kasper*, 514 F. App'x at 217. Thus, Plaintiff has not alleged any facts that, if true, could lead a reasonable fact finder to conclude that Penn State engaged in extreme and outrageous conduct.[1]

**2. Intent**

To satisfy the intent element, a defendant must have (1) known that severe emotional distress "is certain, or substantially certain, to result from his conduct," or (2) deliberately

---

[1] Plaintiff also argues that Penn State's failure to prevent Staples-Dixon from publicizing his private information was extreme and outrageous. ECF No. 19-2 at 12. However, the negligent conduct that Plaintiff alleges cannot give rise to a claim for intentional infliction of emotional distress. *See Daughen v. Fox*, 539 A.2d 858, 864 (Pa. Super. Ct. 1988) (performing surgery on the plaintiff's dog based on another animal's x-ray was not extreme and outrageous).

disregarded the high degree of probability that emotional distress would follow that conduct. *Chuy*, 595 F.2d at 1275 n.12 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. i). A defendant need not have been aware of the "natural and probable consequences" of his or her words. *Id.* at 1275. It is enough that a plaintiff's distress was substantially certain to follow the defendant's statements. *Id.*

**a. Staples-Dixon**

Plaintiff alleged sufficient facts to support an inference that Staples-Dixon knew Plaintiff was particularly sensitive about his childhood abuse, yet she published that information anyway. Plaintiff alleged that he told Staples-Dixon that his abuse "caused him lifelong struggles related to trust, relationships, intimacy, and identity." ECF No. 14 ¶ 28. Indeed, Staples-Dixon encouraged Plaintiff to share his "highly personal gender stor[y]" for that reason. *Id.* ¶ 22. When Plaintiff shared his story of abuse, Staples-Dixon stated that his story exemplified "the extreme vulnerability called for by the Seminar's pedagogy." *Id.* ¶ 25. Despite this knowledge, Staples-Dixon proceeded to publish Plaintiff's abuse story and identify him by name. Given her knowledge of Plaintiff's emotional sensitivity, Staples-Dixon was, or reasonably should have been, substantially certain that her publication would cause Plaintiff severe emotional distress. *Pierce v. Penman*, 515 A.2d 948, 953 (Pa. Super. Ct. 1986) (holding that because defendant physicians were aware of plaintiff's emotional problems, they should have known that their repeated refusal to provide her with her medical records would cause her severe emotional distress). Therefore, the Court will deny Defendant Staples-Dixon's motion to dismiss Count IV.

**b. Penn State**

Plaintiff has not plausibly alleged that Plaintiff's emotional distress was substantially certain to flow from any conduct on the part of Penn State. True, Penn State's conduct may have

compounded the distress caused by the book insofar as it reminded him of Staples-Dixon's disclosure. But Penn State's conduct itself was not the cause of Plaintiff's emotional distress. Accordingly, the Court will grant Penn State's motion to dismiss Count III on that basis.

**C. Vicarious Liability**

Plaintiff seeks to hold Penn State vicariously liable for Staples-Dixon's alleged tortious conduct. ECF No. 14 ¶¶ 58, 72. However, Plaintiff failed to plausibly assert this theory of liability. "[U]nder Pennsylvania law, an employer generally cannot be held liable for the intentional torts of its employees." *Fala v. Perrier Grp. of Am.*, No. 99-3319, 2000 WL 688175, at *13 (E.D. Pa. May 25, 2000) (citing *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998)). To hold an employer vicariously liable for an employee's intentional tort, the employee's act must have occurred within the course and scope of employment. *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979). "[C]onduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits[; and] (c) it is actuated, at least in part, by a purpose to serve the master." *CNA v. United States*, 535 F.3d 132, 146 (3d Cir. 2008).

Here, Plaintiff alleged no facts showing that Staples-Dixon's publication of the book was within the scope of her employment. The only allegation related to the nature of the relationship between Defendants is that Staples-Dixon is a tenured professor at Penn State where she taught the summer seminar. ECF No. 14 ¶¶ 11-15. Plaintiff states new facts in his opposition brief describing the kind of work Staples-Dixon was hired to perform and argues that the publication was within that scope. *See* ECF No. 19-2 at 7-9. However, "facts raised for the first time in opposition to a motion to dismiss cannot be considered." *Dates v. Winters*, No. 21-0037, 2022 WL 1157890, at *4 n.8 (E.D. Pa. Apr. 19, 2022) (citing *Mayer v. Belichick*, 605 F.3d 223, 230

(3d Cir. 2010)). In any event, even if publication of research was part of Staples-Dixon's job in general, Plaintiff failed to plausibly allege that the publication of this book in particular was within the scope of her employment. *See Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 365 (E.D. Pa. 2020); *Bell v. Borough of W. Mifflin*, No. 16-690, 2017 WL 1832494, at *9 (W.D. Pa. May 8, 2017).

Moreover, Plaintiff alleged that Staples-Dixon motivation in publishing the book was personal. The only motivation attributed to Staples-Dixon was that she published the book "for commercial gain." ECF No. 14 ¶ 68. Tortious conduct committed for personal reasons is not within the scope of employment. *Costa*, 708 A.2d at 493. Staples-Dixon's "commercial gain" from publishing the book is a personal pecuniary interest. Beyond these allegations, Plaintiff alleged no facts to show that Staples-Dixon's writing and publishing of the book was "actuated, at least in part, by a purpose to serve" Penn State. *CNA*, 535 F.3d at 146. Therefore, the Court will grant Penn State's motion to dismiss Plaintiff's vicarious liability claims without prejudice. *See McDonald's*, 504 F. Supp. 3d at 365.

**D. Punitive Damages**

Plaintiff seeks punitive damages against Staples-Dixon. ECF No. 14 at 12, 15. Staples-Dixon argues that Plaintiff has not plausibly alleged that she had the mental state required to sustain a claim for punitive damages. ECF No. 17-1 at 17-18. Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984) (citation omitted). The defendant's "act, or failure to act, must be intentional, reckless or malicious." *Id.* at 748.

Here, Plaintiff plausibly asserted a claim for punitive damages. As discussed, Plaintiff plausibly alleged that Staples-Dixon was reckless in publishing his history of sexual abuse. Plaintiff's public disclosure of private life claim arises from the same set of facts. Because Plaintiff bases his punitive damages claim on Staples-Dixon's allegedly reckless conduct, he has plausibly alleged that she had the mental state required to sustain a claim for punitive damages.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Penn State's motion to dismiss Counts I and III without prejudice. The Court will deny Staples-Dixon's motion as to Counts II and IV.[2] An appropriate Order follows.

**BY THE COURT:**

MARY KAY COSTELLO
United States District Judge

[2] Defendants also move to strike Plaintiff's use of the phrase "fraudulently induced" in the introduction of the Amended Complaint. *See* ECF No. 14 at 1. The Court will deny that motion. Motions to strike are disfavored. *Unite 4 Freedom, Inc. v. Van Der Venn, Hartshorn, Levin & Lindheim LLP*, No. 26-1616, 2026 WL 1521326, at *10 (E.D. Pa. May 29, 2026). They are often "purely cosmetic or time wasters." *Sabol v. Allstate Prop. & Cas. Ins. Co.*, No. 11-0532, 2011 WL 13118101, at *4 (M.D. Pa. Sept. 13, 2011) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1392). And here, the Court is not inclined to quibble with Plaintiff's word choice. *See Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F. Supp. 975, 982 (E.D. Pa. 1973).